1  **GUTRIDE SAFIER LLP**
   ADAM J. GUTRIDE (State Bar No. 181446)
2  SETH A. SAFIER (State Bar No. 197427)
   KRISTEN SIMPLICIO (State Bar No. 263291)
3  835 Douglass Street
   San Francisco, California 94114
4  Telephone: (415) 336-6545
5  Facsimile: (415) 449-6469
6  Attorneys for Plaintiff

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  ZENA CARMEL-JESSUP, individual, on behalf of   CASE NO
    herself, the general public and those similarly situated

12                                                 CLASS ACTION COMPLAINT
        Plaintiff,                                 FOR VIOLATIONS OF THE
13                                                 ELECTRONIC PRIVACY ACT;
                                                   THE STORED
14          v.                                     COMMUNICATIONS ACT;
                                                   THE CALIFORNIA
15  FACEBOOK, INC. and ZYNGA GAME NETWORK,         CONSUMER LEGAL
    INC.                                           REMEDIES ACT; COMPUTER
16                                                 CRIME LAW; BREACH OF
        Defendants                                 CONTRACT; FRAUD;
17                                                 NEGLIGENT
                                                   MISREPRESENTATION; AND
18                                                 UNFAIR TRADE PRACTICES
19
                                                   JURY TRIAL DEMANDED
20

21

22

23

24

25

26

27

28

-1-

Zena Carmel-Jessup, by and through her counsel, brings this Class Action Complaint against Defendants, on behalf of herself and those similarly situated, for violations of the Electronic Communications Privacy Act, Stored Communications Act, California Computer Crime Law, California Consumers Legal Remedies Act, California Unfair Competition Law; breach of contract; breach of the duty of good faith and fair dealing; fraud; and negligent misrepresentation. The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel, unless stated otherwise.

## INTRODUCTION

1.      This case is about Defendants' policy and practice of transferring, without consent, class members' personal, identifying information to third parties, in violation of Federal and State law as well as Defendants' own privacy policies.

## PARTIES

2.      Zena Carmel-Jessup, is and at all times alleged in this Class Action Complaint was, an individual and a resident of Silver Spring, Maryland.

3.      Defendant Facebook, Inc. ("Facebook") is a corporation organized under the laws of the state of Delaware, having its principal place of business in Mountain View, California.

4.      Defendant Zynga Game Network ("Zynga") is a corporation organized under the laws of the state of Delaware, having its principal place of business in San Francisco, California.

5.      The Parties identified in paragraphs 3 through 4 of this Class Action Complaint are collectively referred to hereafter as "Defendants."

6.      At all times herein mentioned, the acts and omissions of Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

7.      At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein. At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages, and other injuries, as herein alleged.

1

## JURISDICTION AND VENUE

2

8.     The injuries, damages and/or harm upon which this action is based, occurred or

3

arose out of activities engaged in by Defendants within and affecting this District, and the State of

4

California.

5

9.     Defendants have engaged, and continue to engage, in substantial and continuous

6

business practices in the State of California, including in this District.

7

10.     Accordingly, Plaintiff allege that jurisdiction and venue are proper in this Court.

8

## SUBSTANTIVE ALLEGATIONS

9

### Defendants Provide Online Social Networking and Gaming Services.

10

11.     Defendant Facebook is a social networking website.  Facebook allows its users to

11

create profiles to share photos, likes and interests, and other personal information with their

12

friends and family, other users, and, in certain instances, the general public.

13

12.     One of the features offered by Facebook is the ability to participate in online

14

games.  Third party developers ("Developers") create games, or applications, to which Facebook

15

users can link to play games with other Facebook users, including their friends and, in certain

16

instances, the general public.

17

13.     Defendant Zynga is a Developer.  It has created a number of the most popular

18

online games used by Facebook users.  These games include, without limitation, Farmville, Mafia

19

Wars, Texas HoldEm, Scramble, Café World, FrontierVille, and Treasure Isle (collectively

20

"Zynga Games").

21

14.     Zynga is the most popular Developer providing applications to Facebook.

22

Approximately 10% of Facebook users (at least 60 million people) play Zynga Games.  Zynga

23

profits from having access to the Facebook platform and Facebook profits from the increased

24

traffic to its site generated by the popularity of Zynga Games.

25

15.     In addition to Zynga Games, Facebook permits users to access numerous other

26

applications operated by Developers ("Applications").  These Applications include games,

27

calendars, invitations, social action groups, and methods of sharing interests (such as movies,

28

books and sports).

**Facebook and Developers Such as Zynga Cooperate To Build Game Platforms and Share Information With Third Party Advertisers.**

16. When a user first joins Facebook he or she is prompted to create a profile, select a profile picture, and then choose which information to enter into their profile. He or she is also currently prompted to determine which information will be available to the general public—i.e., "everyone", which will be available only to their "friends," which will be available only to their "friends of friends," and which information will be available to "other." The "other" setting permits further customization—e.g., the exclusion of certain "friends" such as a user's parents. Facebook users wishing to further protect their privacy can limit who can find them via Facebook's search engine or block specific individuals from finding them, so that their profile does not come up even if someone searches for their name (collectively "privacy settings").

17. After a new user completes the registration process, Facebook assigns him or her a unique user identification code ("Facebook ID"). All Facebook users can be located with their Facebook ID by inserting that Facebook ID into the following URL address: http://www.facebook.com/?ref=logo#!/profile.php?id=[Facebook ID]. In some cases, the Facebook ID is the same as the person's name, and it other cases it is a truncated version of the name or a series of numbers. For example a user Joseph Smith might have his Facebook URL be http://www.facebook.com/?ref=logo#!/profile.php?id=josephsmith or http://www.facebook.com/?ref=logo#!/profile.php?id=jossmith or http://www.facebook.com/?ref=logo#!/profile.php?id=123456789.

18. For many profile fields, Facebook's default privacy settings are set so that the information is publicly available. Items set to the default of public are: all posts by the user, the user's relationship status, sexual orientation, hometown, current city of residence, names of schools attended, jobs held, biographical statement, favorite quotations, family information, and list of all of the user's "friends". Users must affirmatively seek out the privacy controls to make their information private. Facebook frequently changes its privacy controls, and thus a user who seeks to protect personal information must constantly stay abreast of the changes, navigate through a complicated form, and make adjustments regularly.

19. In addition, not all privacy controls are available or accurately summarized on the

-3-

same page.  For example, the summary page of privacy settings, available to a logged-in user at http://www.facebook.com/settings/?tab=privacy, shows a list of privacy settings by subject. Many items will show as "other" and the user must click for more details, even when the actual setting is "friends only."  This page also does not make clear that information made available to "friends" will also be shared with the Developers of any applications used by the friends, unless the user goes to an entirely separate page of privacy settings for "applications and websites," aka Developers, and changes the settings in the subsection "Info accessible through your friends." Thus, for example, if a user wishes to keep his current city of residence visible only to friends, and not to others (such as Applications), he must do so twice: once on the regular privacy settings, and again on the subsection "Info accessible through your friends" in the privacy settings for applications and websites.

20.     Even if a user diligently reviews all the screens and selects the strictest privacy settings on all of them, certain information is still accessible to anyone who has a Facebook account and knows the original user's unique Facebook ID.  This information is at a minimum, the user's name, the user's gender, the user's profile pictures, and the user's "likes."  A "like" is anything that the user has marked as something of interest by pressing on an icon that shows a "thumb's up" and the word "Like."  In addition, even if the user chooses to make his list of friends private—i.e. not visible to anyone other than his friends, any Developer who knows the user's Facebook ID will have access to the list of the user's "friends."

21.     A Facebook user wanting to play a Zynga Game must register with Zynga by clicking a button marked "Allow" that gives Zynga access to the Facebook user's information. Similarly, a Facebook user wanting to use another Application will click an "Allow" button that gives the Developer of that Application access to the user's information.  The Zynga Game or other Application then appears in an iframe, which makes it possible to view one webpage (Zynga) through another webpage (Facebook).  The Facebook URL remains in the browser, and the Facebook toolbar remains at the top of the page.  For example, Facebook users playing Farmville would see the URL http://apps.facebook.com/onthefarm in their browsers, but the game appearing in the iframe is actually hosted by farmville.com, a wholly owned subsidiary of Zynga.

-4-

Farmville.com then generates a customized Farmville URL for each Facebook user's game, using the user's Facebook ID. These customized URLs do not appear in the browser or anywhere immediately apparent to the user.

22.     The content created by the Developer (such as Zynga) appearing in the iframe contains the Application (i.e., the Zynga Game) and third party advertisements. These advertisements are generated by third parties ("Third Party Ad Platform Partners"). Among the Third Party Ad Platform Partners are Doubleclick[1] and Interclick, both of which are based in the State of New York.

23.     The Third Party Ad Platform Partners employ sophisticated technology that enables them to gather information about the user, analyze that information, and generate or render advertisements on the website for advertisers ("Third Party Advertisers") such as General Motors, Coca-Cola, Motorola, L'Oréal, Visa, Nike, and Carlsberg and many other companies.

24.     While the user is using an Application (such as a Zygna Game), the user's browser automatically forwards the URL of page in the iframe to the Third Party Ad Platform Partners hosting ads on that particular page. Because this URL contains the user's unique Facebook ID, the Third Party Ad Platform Partners have access to all public information associated with that Facebook ID, including, at a minimum, his or her name, gender and list of friends (and any public information associated with those friends), and at a maximum every public piece of information associated with that particular Facebook ID.

**Sharing Information With Third Parties Violates Facebook's and Zynga's Privacy Policies.**

25.     Facebook maintains a privacy policy ("Facebook Privacy Policy") and a Statement of Rights and Responsibilities ("Facebook Terms"), which covers a variety of matters, including provisions on safety, mobile services, and other issues, as well as user privacy. Users are obligated to agree to the Facebook Terms and Facebook Privacy Policy before joining Facebook.

26.     The summary of the Facebook privacy policy available at http://www.facebook.com/privacy/explanation.php (last viewed October 27, 2010) states "We

---

[1] Doubleclick is a wholly owned subsidiary of Google, Inc., which is based in Mountain View, California.

1   never share your personal information with our advertisers. Facebook's ad targeting is done

2   entirely anonymously. If advertisers select demographic targeting for their ads, Facebook

3   automatically matches those ads to the appropriate audience. Advertisers only receive anonymous

4   data reports."

5       27.     The very first item in the Facebook Privacy Policy, available at

6   http://www.facebook.com/policy.php (last visited October 27, 2010) says, "Your privacy is very

7   important to us."  Section 5 of the Facebook Privacy Policy states, "We don't share your

8   information with advertisers without your consent."

9       28.     Section 4 of the Privacy Policy further explains the "Facebook Platform." It states,

10  "As mentioned above, we do not own or operate the applications or websites that use Facebook

11  Platform.  That means that when you use those applications and websites you are making your

12  Facebook information available to someone other than Facebook. Prior to allowing them to

13  access any information about you, we require them to agree to terms that limit their use of your

14  information (which you can read about in Section 9 of our Statement of Rights and

15  Responsibilities) and we use technical measures to ensure that they only obtain authorized

16  information.  To learn more about Platform, visit our About Platformpage.notes."

17      29.     The phrase "Statement of Rights and Responsibilities" in Section 4 of the Privacy

18  Policy is a link to another page bearing that title, available at http://www.facebook.com/terms.php

19  (last visited October 27, 2010).  Section 9 of the terms on that page state that "If you are a

20  developer or operator of a Platform application or website, the following additional terms apply to

21  you:... Your access to and use of data you receive from Facebook, will be limited as follows...

22  (6) You will not directly or indirectly transfer any data you receive from us to (or use such data in

23  connection with) any ad network, ad exchange, data broker, or other advertising related toolset,

24  even if a user consents to that transfer or use. (7) You will not sell user data.  If you are acquired

25  by or merge with a third party, you can continue to use user data within your application, but you

26  cannot transfer user data outside of your application.... (10) You will comply with all other

27  restrictions contained in our Developer Principles and Policies."

28      30.     The phrase "Developer Principles & Policies" is a link to yet another page of the

-6-

Facebook website, available at http://developers.facebook.com/policy/ (last visited October 27, 2010), which states that Developers "must not include functionality that proxies, request or collects Facebook usernames" and that they "will not directly or indirectly transfer any data you receive from us to (or use such data in connection with) any ad network, ad exchange, data broker, or other advertising related toolset, even if a user consents to such transfer or use. By indirectly we mean you cannot, for example, transfer data to a third party who then transfers the data to an ad network. By any data we mean all data obtained from the Facebook API, including aggregate, anonymous or derivative data."

31.     Zynga too maintains a privacy policy ("Zynga Privacy Policy") and a terms of service ("Zynga Terms"), which users must agree to when registering to play Zynga Games.

32.     Zynga's Terms, available at http://www.zynga.com/about/terms-of-service.php (last visited October 27, 2010) state "Zynga respects the privacy of visitors to our game. Information collected from you is subject to the pertinent social network's policy." In this case, the "pertinent social network" would be Facebook.

33.     Zynga's Privacy Policy, available at http://www.zynga.com/about/privacy-policy.php (last visited October 27, 2010) states, "[w]e do not sell or rent your 'Personally Identifiable Information' to any third party." "Personally Indentifying Information" is defined to include such things as "names and email addresses provided at your discretion," "billing information such as name, street address, phone number," and "other information about yourself (such as gender, age, occupation, hobbies, interests, zip code, etc.)" Because the Facebook ID can be used to identify a person and at a minimum his or her gender, it is encompassed by Zynga's definition of the term "Personally Identifiable Information."

34.     Despite the Facebook Terms and Facebook Privacy Policy (including the pages governing Developers that are referred to in those documents), Facebook and Zynga have intentionally refused to develop adequate technical measures to ensure that Facebook IDs are not transmitted to third parties including Third Party Ad Platform Partners and Third Party Advertisers.

**Plaintiff Joined Facebook and Participated in Zynga Games.**

35.     Plaintiff is a Facebook user.  Within the four years preceding the filing of this Complaint, Plaintiff played the Zynga games Frontierville, Treasure Isle, Farmville and Café World, and she paid at least five dollars ($5.00) to Zynga (via its agent, Trial Pay, Inc.) to purchase credits for use on the Zynga Games.

36.     Prior to enrolling in Facebook, prior to using the Zynga games, and prior to purchasing credits for use on Zynga, Plaintiff reviewed the applicable privacy policy information. Based on that review, Plaintiff believed that personally identifying information about her would not be shared with any third parties such as advertisers or ad networks.

37.     Defendants transferred and/or sold Plaintiff's personal, identifying information to third parties without her knowledge or consent.  Defendants unlawfully profited from their unlawful sale and/or transfer of Plaintiff's personal, identifying information

## CLASS ALLEGATIONS

38.     Plaintiff brings this action against Defendants on behalf of herself and all others similarly situated, as a class action pursuant to section 382 of the California Code of Civil Procedure and section 1781 of the California Civil Code.  Plaintiff seeks to represent a group of similarly situated persons.  The class is defined as follows:

> All Facebook users who, from October 28, 2006 through the present, who had personally identifying information, including but not limited to their unique Facebook user identification number, transferred by Facebook, Zynga, or any other Facebook Developers to any advertiser, ad network, ad exchange, data broker, or other advertising related toolset.

39.     This action has been brought and may properly be maintained as a class action against the Defendants pursuant to the provisions of California Code of Civil Procedure section 382 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

40.     Numerosity: Although Plaintiff does not know the exact size of the class, Plaintiff believes that the persons in the class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

-8-

41.    Common Questions Predominate: This action involves common questions of law and fact to the potential class because each class member's claim derives from the deceptive, unlawful and/or unfair statements that Defendants' made about their privacy practices. Among the questions of law and fact common to the class are:

a)    Whether Facebook violated its agreements with class members by transferring, providing or selling access to Facebook IDs and other personal information to its advertisers, Developers or other third parties;

b)    Whether Facebook violated its agreements with class members by transferring or providing or selling access to Facebook IDs and other personal information to its Developers or other third parties when it knew that they were, or would, transfer, provide or sell access to Facebook IDs and other personal information to their advertisers or other third parties;

c)    Whether Zynga violated its agreement with Facebook and Facebook users by transferring, providing or selling access to Facebook IDs and other personal information to its advertisers or third parties;

d)    Whether Facebook negligently and/or intentionally chose to transmit unique Facebook IDs and other personal information to Zynga, other Developers or other third parties;

e)    Whether Facebook and Zynga negligently and/or intentionally chose not to take steps to protect users Facebook IDs and other personal information;

f)    The amount of revenues and profits Defendants received as a result of such wrongdoing;

g)    Whether class members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

h)    Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon.

42.    Typicality: Plaintiff's claims are typical of the class because she was a Facebook user who played Zynga games. Thus, Plaintiff and class members sustained the same injuries and damages arising out of Defendants' conduct in violation of the law. The injuries and damages of each class member were caused directly by Defendants' wrongful conduct in violation of law as

-9-

1  alleged.

2    43.    Adequacy: Plaintiff will fairly and adequately protect the interests of all class
3  members because it is in her best interests to prosecute the claims alleged herein to obtain full
4  compensation due to her and the class for the unfair and illegal conduct of which she complains.
5  Plaintiff also has no interests that are in conflict with or antagonistic to the interests of class
6  members. Plaintiff has retained highly competent and experienced class action attorneys to
7  represent their interests and that of the class. No conflict of interest exists between Plaintiff and
8  class members, because all questions of law and fact regarding liability of Defendants are
9  common to class members and predominate over any individual issues that may exist, such that
10  by prevailing on her own claims, Plaintiff necessarily will establish Defendants' liability to all
11  class members. Plaintiff and her counsel have the necessary financial resources to adequately and
12  vigorously litigate this class action, and Plaintiff and her counsel are aware of their fiduciary
13  responsibilities to the class members and are determined to diligently discharge those duties by
14  vigorously seeking the maximum possible recovery for class members.

15    44.    Superiority: There is no plain, speedy, or adequate remedy other than by
16  maintenance of this class action. The prosecution of individual remedies by members of the class
17  will tend to establish inconsistent standards of conduct for the Defendants and result in the
18  impairment of class members' rights and the disposition of their interests through actions to
19  which they were not parties. Class action treatment will permit a large number of similarly
20  situated persons to prosecute their common claims in a single forum simultaneously, efficiently,
21  and without the unnecessary duplication of effort and expense that numerous individual actions
22  world engender. Furthermore, as the damages suffered by each individual member of the class
23  may be relatively small, the expenses and burden of individual litigation would make it difficult
24  or impossible for individual members of the class to redress the wrongs done to them, while an
25  important public interest will be served by addressing the matter as a class action.

26    45.    Nexus to California. The State of California has a special interest in regulating the
27  affairs of corporations that do business here, particularly respecting their conduct towards
28  residents of this state. Accordingly, there is a substantial nexus between Defendants' unlawful

-10-

1  behavior and California such that the California courts should take cognizance of this action on

2  behalf of a class of individuals who reside throughout the United States.

3      46.    Plaintiff is unaware of any difficulties that are likely to be encountered in the

4  management of this action that would preclude its maintenance as a class action.

5                              **CAUSES OF ACTION**

6
                            **FIRST CAUSE OF ACTION**
7          **(Violation of the Electronic Privacy Act 18 U.S.C. § 2510 *et seq.*)**

8      47.    On Behalf of Plaintiff And The Class

9      48.    Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint

10  as if set forth herein.

11      49.    Plaintiff and the class members' activities while using Facebook and Zynga

12  constituted "electronic communications" as defined by 18 U.S.C. § 2510(12). Facebook and

13  Zynga are "persons" as defined by 18 U.S.C. § 2510(6). Plaintiff and class members played

14  Zynga Games, sending writings, images, and data through the internet and were subjected to ads

15  created by Third Party Ad Platform Partners and Third Party Advertisers, including those based

16  out of state, thereby affecting interstate commerce.

17      50.    Defendants, in providing a service to Plaintiff and class members, enabling them

18  to send and receive electronic communications, are providers of electronic communication

19  service to the public, as defined by 18 U.S.C. § 2510(15).

20      51.    In creating and transmitting URLs containing Plaintiff and class members'

21  Facebook IDs and other identifying information to Third Party Advertisers, Third Party Ad

22  Platform Partners and other third parties, Defendants intentionally divulged the contents of

23  communications not intended for those third parties in violation of § 2511(3)(a).

24                              **SECOND CAUSE OF ACTION**
                **(Violation of the Stored Communications Act 18 U.S.C. § 2711 *et seq.*)**
25                          **On Behalf of Plaintiff And The Class**

26      52.    Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint

27  as if set forth herein.

28      53.    In holding information about the Plaintiff and class members, including the

Facebook ID and other identifying information, Defendants provide temporary, intermediate storage of electronic communications and remote computing services as defined by 18 U.S.C. §§ 2711(2) and 2510(17).

54.     While Plaintiff and class members access Facebook, the Zynga Games and other Applications, Defendants hold their personal, identifying information in temporary storage as defined by 18 U.S.C. § 2510(17)(A).

55.     When Plaintiff and class members view a Zynga Game or other Application through the Facebook platform, Defendants send an electronic communication to the Third Party Ad Platform Partners and Third Party Advertisers allowing those third parties to gather personal information about them. That information is held in temporary storage by Defendants pending the delivery of the Plaintiff's and class member's personal information to the Third Party Ad Platform Partners, Third Party Advertisers, Developers or other third parties.

56.     By divulging personal information of their users without their consent, Defendants violated 18 U.S.C. § 2702(a)(1).

57.     Defendants designed the iframe and URL containing the Facebook ID to facilitate the transmission of identifying information to Third Party Ad Platform Partners, Third Party Advertisers, and or other third parties. These disclosures were not necessary for Defendants' operations or to protect Defendants' rights or property.

### THIRD CAUSE OF ACTION
**(Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)**
**On Behalf of Plaintiff And The Class**

58.     Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

59.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, et seq. ("CLRA").

60.     Plaintiff and other class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

61.     Defendants' actions, representations and conduct have violated, and continue to

-12-

violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

62. The Facebook service and Zynga Games that Plaintiff (and others similarly situated class members) obtained from Defendants were "goods" within the meaning of California Civil Code § 1761.

63. Plaintiff and other class members paid money for use of the Zynga Games and other Applications. Plaintiff and all class members expended time in enrolling in, and using, Facebook, the Zynga Games, and the Applications. This money and time would not have been expended had Plaintiff and class members known that Defendants were making personally identifying information available to third parties.

64. By engaging in the actions, representations and conduct set forth in this class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(5), § 1770(a)(14), and§ 1770(a)(16) of the CLRA. In violation of California Civil Code §1770(a)(5), Defendants' acts and practices constitute improper representations that the goods or services that they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code §1770(a)(14), Defendants' acts and practices constitute improper representations that the transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law. In violation of California Civil Code §1770(a)(16), Defendants represent that the subject of a transaction has been supplied in accordance with a previous transaction when it has not. Specifically, Defendants represented that Plaintiff's and class members' personal, identifying information would remain private and/or not shared with, or sold or rented to, third parties, but that information was not, in fact, kept private but rather was shared, sold and/or rented to third parties.

65. Plaintiff requests that this Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendants are not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the class will continue to suffer harm.

66. CLRA § 1782 NOTICE. **Irrespective of any representations to the contrary in**

-13-

1  this Class Action Complaint, Plaintiff specifically disclaims, at this time, any request for

2  damages under any provision of the CLRA. Plaintiff, however, hereby provides Defendants

3  with notice and demand that within thirty (30) days from that date, Defendants correct, repair,

4  replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of

5  herein. Defendants' failure to do so will result in Plaintiff's amending this Class Action

6  Complaint to seek, pursuant to California Civil Code § 1780(a)(3), on behalf of herself and

7  similarly situated class members, compensatory damages, punitive damages and restitution of any

8  ill-gotten gains due to Defendants' acts and practices.

9        67.    Plaintiff also requests that this Court award her costs and reasonable attorneys'

10  fees pursuant to California Civil Code § 1780(d).

11

12  **FOURTH CAUSE OF ACTION**
**(Violation of California's Computer Crime Law, Cal. Penal Code § 502)**
13  **On Behalf of Plaintiff and the Class**

14        68.    Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint

15  as if set forth herein.

16        69.    Defendants knowingly shared information relating to personal computers,

17  computer systems, and/or computer networks to execute a scheme or artifice to deceive and

18  wrongfully obtain access to data in violation of Cal. Penal Code § 502(c)(1).

19        70.    Facebook knowingly and wrongfully took, copied, and/or made use of Plaintiff's

20  and class members' information by transmitting it to Zynga, Developers and other third parties in

21  violation of Cal. Penal Code § 502(c)(2). Zynga, Developers and other third parties, in turn,

22  knowingly and wrongfully took, copied, and/or made use of Plaintiff's and class member

23  information by transmitting it to Third Party Ad Platform Partners, Third Party Advertisers, or

24  other third parties in violation of Cal. Penal Code § 502(c)(2).

25        71.    Defendants knowingly and without permission used or caused to be used computer

26  services by impermissibly accessing, collecting, and transmitting Plaintiff's and class members'

27  personal information in violation of Cal. Penal Code § 502(c)(3).

28        72.    Defendants knowingly and without permission provided or assisted in providing to

Third Party Ad Platform Partners, Third Party Advertisers, Developers or other third parties a means of accessing a computer, computer system, or computer network by creating a system that allowed advertisers to impermissibly access, collect, and transmit Plaintiff's and class members' personal information in violation of Cal. Penal Code § 502(c)(6).

73.     Defendants knowingly and without permission accessed or caused to be accessed Plaintiff's and class members' computers and/or computer networks by impermissibly divulging Plaintiff's and class members' personal information to third parties in violation of Cal. Penal Code § 502(c)(7).

74.     Defendants knowingly and without permission introduced a computer contaminant, as defined in Cal. Penal Code § 502(b)(10), by introducing computer instructions designed to record or transmit to third parties Plaintiff's and class members' personally-identifiable information on Zynga's and Developers' computer networks without the intent or permission of Plaintiff or the class in violation of Cal. Penal Code § 502(c)(8).

75.     Plaintiff and class members suffered irreparable injury as a result of this unlawful conduct, including the collection and dissemination of personal information.  The harm from the breach is ongoing and compounding, as Third Party Ad Platform Partners, Third Party Advertisers, Developers or other third parties continue to have access to collected information.

76.     Accordingly Plaintiff and the class have no adequate remedy at law, entitling them to injunctive relief.  In addition, as a direct and proximate result of Defendants' violations of Cal. Penal Code § 502, Defendants have caused other losses in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
**(Breach of Contract)**
**On Behalf of Plaintiff and the Class**

77.     Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

78.     Defendants require Plaintiff and class members to agree to their privacy policies and terms and conditions (collectively "Agreements").  Furthermore, Facebook incorporates into its Agreements its contracts with Developers such as Zynga set forth above.  These Agreements

-15-

constitute a valid, enforceable contract between Facebook, Zynga, and their users, in that Plaintiff and class members are parties to the Agreements and/or third party beneficiaries of the Agreements.

79.    In reliance on Facebook and Zynga's promises that personal information would not be submitted to advertisers or ad network without their permission, Plaintiff and class members agreed to sign up for Facebook, and subsequently, Applications such as Zynga Games; to use Facebook and the Applications; and to pay money to Zynga for use in the Zynga Games.

80.    Despite these promises, Facebook and Zynga transferred personal information of Plaintiff and class members, to Third Party Ad Platform Partners, Third Party Advertisers, Developers or other third parties without the consent of Plaintiff and class members.

81.    In doing so, Facebook and Zynga materially breached their Agreements with Plaintiff and class members, who have been damaged as a direct and proximate result of the breach.

### SIXTH CAUSE OF ACTION
**(Breach of Duty of Good Faith and Fair Dealing)**
**On Behalf of Plaintiff and the Class**

82.    Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

83.    Plaintiff and the class entered into a contract with Defendants, and Plaintiff performed their end of the bargain. The contract entered into between Plaintiff, and those similarly situated, and Defendants included an implied covenant, or duty, of good faith and fair dealing.

84.    Defendants breached the implied covenant, or duty, of good faith and fair dealing by unfairly interfering with the rights of Plaintiff and those similarly situated to receive the benefits of this contract by transferring personal information to Third Party Ad Platform Partners, Third Party Advertisers, Developers or other third parties without the consent of Plaintiff and class members.

85.    As a direct and proximate result of the Defendants' breach of contract, Plaintiff

1    and the class have suffered damages.

2

3                          **SEVENTH CAUSE OF ACTION**
                        **(Fraud, Deceit, and Misrepresentation)**
4                        **On Behalf of Plaintiff and the Class**

5        86.    Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint

6    as if set forth herein.

7        87.    Defendants represented to Plaintiff that her personal information would not be

8    shared with advertisers and ad networks.

9        88.    Defendants knew their representations to be false and had no reasonable grounds

10   for believing them to be true when made.

11       89.    In so informing Plaintiff and the class, Defendants breached their duty to them.

12   Defendants also gained financially from, and as a result of, their breach.

13       90.    Plaintiff and class members relied to their detriment on Defendants' fraudulent

14   representations and omissions.   Had Plaintiff and the class been adequately informed and not

15   intentionally deceived by Defendants, they would have acted differently by, without limitation,

16   choosing not to enroll in Facebook; not use the Applications including Zynga Games; and not

17   paying money for the use of the Applications.

18       91.    Defendants and their agents had a fiduciary duty to inform class members at the

19   time of their agreements to utilize Defendants' services of the true nature of the agreement.

20   Defendants and their agents omitted to provide this information to class members and rather

21   provided false statements indicating the contrary to be true.  Class members relied to their

22   detriment on Defendants' false statements and omissions.  These false statements were material to

23   the decisions of class members to contract with Defendants for social networking and online

24   gaming.  In making these false statements and omissions, Defendants breached their duty to class

25   members.  Defendants also gained financially from, and as a result of, their breach.

26       92.    By and through such fraud, deceit, misrepresentations and/or omissions,

27   Defendants intended to induce Plaintiff and class members to alter their position to their

28   detriment.  Specifically, Defendants fraudulently and deceptively induced Plaintiff and class

members to, without limitation, to play Zynga Games and use other Applications and the Facebook platform and to pay money to Defendants.

### EIGTH CAUSE OF ACTION
#### (Negligent Misrepresentation)
#### On Behalf of Plaintiff and the Class

93.     Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

94.     Defendants represented to Plaintiff, and those similarly situated, that their personal information would not be shared with third parties without their consent.

95.     Defendants should have known these representations to be false at the time they were made and had no reasonable grounds for believing their representations to be true.

96.     Defendants intended that Plaintiff and the class rely on these representations.

97.     Plaintiff and the class did reasonably rely on these representations when they entered into the contracts.

98.     Plaintiff and the class were harmed in that they had their personal information transferred to Third Party Ad Platform Partners, Third Party Advertisers, Developers or other third parties without their consent.

99.     Plaintiff and the class suffered damages because of these representations and Defendants' false representations were a substantial factor in causing the damage.

### NINTH CAUSE OF ACTION
#### (Unfair, Unlawful and Deceptive Trade Practices, Business and
#### Professions Code § 17200, et seq.)
#### On Behalf of Plaintiff and the Class

100.     Plaintiff realleges and incorporates by reference the above paragraphs of this Class Action Complaint as if set forth herein.

101.     Within four (4) years preceding the filing of this class Action Complaint, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices in California by engaging in the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint.  In particular, Defendants have

-18-

1   engaged, and continue to engage, in unfair, unlawful and deceptive trade practices by without

2   limitation:

3       a.  transferring personal information to Third Party Ad Platform Partners, Third Party

4           Advertisers, Developers or other third parties in violation of the Electronic

5           Communications Privacy Act  and Stored Communications Act;

6       b.  committing violations of California's Computer Crime Law;

7       c.  violating their own Terms and Privacy Policies, thereby breaching contracts with

8           consumers;

9       d.  engaging in fraud, deceit, misrepresentation, and/or negligent misrepresentation;

10          and

11      e.  violating the CLRA.

12      102.    Plaintiff and those similarly situated relied to their detriment on Defendants'

13  unfair, deceptive and unlawful business practices.  Had Plaintiff and those similarly situated been

14  adequately informed and not intentionally deceived by Defendants, they would have acted

15  differently by, without limitation, not using Facebook or the Applications including Zynga Games

16  and not paying money to Defendants.

17      103.    Defendants engage in these unfair practices to increase their profits.  Accordingly,

18  Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200,

19  et seq. of the California Business and Professions Code.

20      104.    The aforementioned practices, which Defendants have used, and continue to use,

21  to their significant financial gain, also constitute unlawful competition and provide an unlawful

22  advantage over Defendants' competitors as well as injury to the general public.

23      105.    Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as

24  necessary and according to proof, to restore any and all monies acquired by Defendants from

25  Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive

26  trade practices complained of herein, plus interest thereon.

27      106.    Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit

28  Defendants from continuing to engage in the unfair trade practices complained of herein.  The

acts complained of herein occurred, at least in part, within four (4) years preceding the filing of this Class Action Complaint.

107. Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described trade practices are unfair, unlawful and/or fraudulent and injunctive relief restraining Defendants from engaging in any of such deceptive, unfair and/or unlawful trade practices in the future. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that the Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

108. As a direct and proximate result of such actions, Plaintiff and the other members of the class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

109. As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

  A. On Causes of Action Number 1 against Defendants and in favor of ß and the other members of the Class:

    1. For preliminary, equitable, and declaratory relief;

    2. Statutory damages of the greater of $10,000 or $100 a day for each

day of the violations;

    3.   Actual and punitive damages;

    4.  Defendants' profits obtained from the violations described herein; and

    5.  Reasonable attorneys' fees.

B. On Causes of Action Number 2 against Defendants and in favor of Plaintiff and the other members of the Class:

    1.  For preliminary, equitable, and declaratory relief;

    2.  Actual and punitive damages

    3.  Statutory damages not less than $1000; and

    4.  Reasonable attorneys' fees.

C.    On Cause of Action Number 3 against Defendants and in favor of Plaintiff and the other members of the Class:

    1.  For declaratory and injunctive relief pursuant to California Civil Code section 1780;

    2.  [reserved]; and

    3.  [reserved].

D.    On Cause of Action Number 4 against Defendants and in favor of Plaintiff and the other members of the Class:

    1. Injunctive, declaratory and other equitable relief; and

    2. Compensatory damages in an amount to be proven at trial.

E.    On Causes of Action Numbers 5 and 8 against Defendants and in favor of Plaintiff and other members of the Class:

    1.  Declaratory and injunctive relief

    2.  An award of compensatory damages, the amount of which is to be determined at trial; and

F.    On Causes of Action Numbers 6-7  against Defendants and in favor of Plaintiff and other members of the Class:

-21-

1. Declaratory and injunctive relief

2. An award of compensatory damages, the amount of which is to be determined at trial; and

3. An award of punitive damages, the amount of which is to be determined at trial.

G. On Cause of Action 9

1. For restitution pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq.; and

2. For declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq.

D. On all causes of action against Defendants and in favor of Plaintiff, Class members and the general public:

1. For reasonable attorneys' fees according to proof pursuant to, without limitation, the California Legal Remedies Act, California Code of Civil Procedure § 1021.5, and 15 U.S.C. 1640, et seq;

2. For costs of suit incurred; and

3. For such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  October 29, 2010                    **GUTRIDE SAFIER LLP**

Adam J. Gutride, Esq.
Seth A. Safier, Esq.
Kristen Simplicio, Esq.
835 Douglass Street
San Francisco, California 94114

Attorneys for Plaintiff

-22-